Next case is Wallach v. Eaton Corp. 15-3320. The essence of this case is about two businesses' ability to assign an asset. The restatement of contracts... How do we get to the restatement in this case? You get to the restatement because the Federal Common Law governs the validity of the assignment in this case. This Court has yet to determine what the Federal Common Law requires with regard to an assignment. So in determining what the Federal Common Law should be, this Court's starting place is the second restatement of contracts. What's the basis for that? Federal courts can't be simply abdicating to the ALI what constitutes Federal Common Law for the Federal Courts. This is correct, Your Honor. However, this Court's own precedent in Nguyen and several other Federal Courts all turned to the restatement as a representation of the majority opinion across the country. The Federal Common Law is a reflection of the general common law in this country. It's evolved over hundreds of years, and the purpose of the restatement was to survey the law across the country and distill that into the majority approach here. In Nguyen, we simply observed that the restatements were in line with Federal Common Law. We didn't say that the restatements were the source of Federal Common Law, which I take to be your argument. It's not necessarily the source. It's the starting place for determining what the Federal Common Law should be. And Nguyen is just one of many examples within this Court and Courts across the country, including the Supreme Court of the United States. Well, if the restatement is simply a starting place, then where do we go with the rest of the analysis? And what's wrong with the suggestion that has been taken by your colleagues on the other side of the aisle to make the next step looking at a 50-state survey, particularly where the restatement at issue is many decades old? The restatement is the starting place, and then this Court would look as to whether the restatement's position is in line with the important Federal goals of the statutory scheme at issue. Here, in Gulfstream, this Court held that an express antitrust assignment was enforceable. In reaching that conclusion, this Court noted that in asset transfers, oftentimes there was a general assignment, and Courts didn't want to be getting into a case-by-case analysis as to whether the assignment included antitrust claims. So the Court adopted a general rule in order not to get into the intricate questions of the direct purchaser analysis. Similarly, the restatement's approach here, which holds all gratuitous written assignments enforceable, is a bright-line, straightforward analysis. It obviates the need for lower courts to be getting into a case-by-case analysis about the sufficiency or existence of consideration, which would turn antitrust cases into contract disputes, as you've seen in this case. And if we do look at the restatement, is 332 the right section that we look to, or are there other sections that are more specific or more applicable? 332 is the most specific section in the restatement. Indeed, the District Court agreed that the restatement was the appropriate starting point. The District Court simply relied on the wrong section. The District Court turned to the general provision related to contracts instead of the more specific provision related to assignments. Moreover, even if the Court were to adopt the defendant appellee's approach and do a 50-state survey, the majority of courts actually do not require consideration for a valid assignment. If we're going to look to 332 as the most specific, why wouldn't we also take its specific admonition that it doesn't relate to the transfer of non-contractual rights? That is a holdover from previous courts. I mean, this Court even directed the parties to look at a provision from the first restatement, which actually required consideration for assignments for collection. That law has evolved as recognized by Corbin on contracts, which explicitly noted that there was quite a bit of argumentation between courts for quite some time, but that the dispute had been resolved and that gift assignments were enforceable and there was no defense of the obligure that the assignment was not for consideration. In Gulfstream, we stated, and I'm going to have to read the quote, we believe that any exception to the direct purchaser rule would be inappropriate in this case. If we're concerned with creating exceptions to the direct purchaser rule, why would we adopt a rule that you suggest that would make assignments of claims from direct purchasers to indirect purchasers more easily accomplished? Later on, Gulfstream also noted, quote, from expressly assigning its antitrust claims to a remote purchaser. The concern in Gulfstream was about whether or not there was a clear and express assignment of the antitrust claims. In that case, the Court was concerned that a general assignment, there might be factual inquiries about whether or not the purchase price included the assignment. It was unclear and they didn't want lower courts getting into that factual dispute. Notably, Gulfstream actually rejected an attempt by defendants in an antitrust suit to wield a contractual argument to undermine the plaintiff's direct purchaser standing due to an assignment. Well, we did look for the intention of the parties to be manifest, but weren't we also looking to some of the other policy rationales, the goals that you said we would be guided by beyond simply the restatement in the third goal of Illinois BRIC, and that is if we want to see an incentive for people to actually prosecute claims, don't you have a better indication of that if there actually has been consideration, if someone is actually invested in moving forward and with enforcing the claim? Not necessarily, Your Honor. In fact, the best indication of an incentive to prosecute the action is what occurred in this case. Toro received an antitrust assignment and vigorously litigated this case for five years. The record testimony here shows clearly that the assignor, R&R Trucking, intended to convey its claim and had no intention whatsoever of pursuing the antitrust claims here. So, in fact, requiring consideration would undermine the abilities of the parties who are truly invested in pursuing the cases from bringing those claims. Can we go back and make reference to the first restatement, and we had asked the parties to look at that earlier section. What do we take from the fact that it is omitted from the second restatement, but it also is not expressly repudiated? Is there any guidance in terms of the rules of the ALI or any other approach that you see in case law to suggest how we should interpret that? Is that something supportive or adverse to your position, or is it simply inconclusive? I would argue that it is inapposite. That provision was not included in the second restatement for a very straightforward reason. If you look at Section 2 of Section 547, which the Court directed the parties to, it relates specifically to a certain kind of assignment, an assignment for collection. In that type of assignment, entities assign their claims to one organization, oftentimes a trade association, and in exchange for that assignment, they receive their portion of the ultimate judgment. For some time, courts rejected assignments for collection. That is clearly no longer the rule. In fact, even the Supreme Court in Sprint, a case cited in Appellant's reply brief, clearly holds that assignments for collection are acceptable. The restrictions on such assignments in the first restatement are no longer valid, which is why the second restatement, which is merely a reflection of the majority opinion across the country, does not include that distinction. And for choices in action, is the majority rule that a gratuitous assignment is appropriate in those circumstances? Yes, Your Honor. Turning very briefly to the issue of the motions to intervene, this is a straightforward situation of legal error. The district court failed to enforce this court's precedent community-based. Our standard of review is abuse of discretion, right? Yes, but it is an abuse of discretion for the lower court to apply the wrong standard. Here, the lower court did apply the wrong standard in failing to afford the proposed interveners a presumption of timeliness for their motion to intervene. Is that really such a good case for you? I mean, the facts were significantly different in terms of class certification and notice and so forth. Yes. Is that your main case that you're relying on here? Community bank is the strongest case for the fact that the district court committed a legal error. And what's important in community bank are not the facts surrounding the motions for intervention, but the policy rationales underlying this court's adoption of the rule. In community bank, this court relied on the Supreme Court's analysis in American Pipe, which ruled that in determining rules that related to Rule 23, courts should be guided in not trying to incentivize absent class members from filing duplicative and inefficient filings, such as motions to intervene. That is the exact reason why the Supreme Court told putative class members' actions until such a time as they received notice. I see that I'm out of time. It's all right. May I just follow up on that? Of course, Your Honor. Let's assume that at least I have some problems with that argument. Tell me why, under the totality of the circumstances and all the other factors that we look at, why there was a mistake here, even in abuse of discretion. Even setting aside the legal error, the court abused its discretion in analyzing the timeliness factors here. The strongest reason for this is that the court inexplicably held absent class members to be on notice that defendants intended to challenge the adequacy of class representatives from questions that defendants had propounded in interrogatories that these absent class members didn't even have access to. This was in October or November 2014? The interrogatories were propounded in August of 2015. In October or November, there were depositions of the assignor and assignee in this case, which absent class members also did not have access to. Even assuming absent class members could read between the lines and determine that those questions suggested that there were legal problems with the putative class representatives, absent class members did not have access to those materials, which is why Community Bank and American Pipe hold that absent class members have no duties whatsoever to the litigation until they receive notice. And the notice was the filing of the motion? We would argue that proposed interveners were actually ahead of the game because class notice had not been distributed to the class. No, but the motion was filed in January or February, no? In January, the defendant appellee submitted a letter to the court requesting leave to move to dismiss the action for lack of standing due to the assignment issue. If you don't prevail, can your other clients, Toledo and JJRS, file another lawsuit? Absolutely. Under American Pipe, their causes of action are told, but that would require re-litigating five years of issues. This is the exact reason why the presumption applies. But a presumption also suggests that it can be rebutted. Yes, Your Honor. And I assume you would agree, in the abstract at least, that notice to parties of a need to intervene and protect their interests is one means to rebut. Correct, Your Honor. What do we make of the fact here that interveners in Toro appear to be represented by the same counsel? Why can't we infer from that that this is part of a coordinated and thoughtful strategic decision about who to bring in when, and that could have been done at an earlier time? It's not appropriate to impute counsel's knowledge to the proposed interveners until the point at which proposed interveners retained counsel, which was not until 2015. Otherwise, proposed interveners, absent class members, would have every incentive to get separate counsel who had no knowledge or involvement in the case and then would have to get completely up to speed. Here the most efficient course for absent class members who are concerned that their rights might be affected by the case is to retain class counsel. However, if the mere act of retaining class counsel would render their motion for intervention untimely, that would be a very inefficient result. There's no argument made about the point in time at which Wallach came out of the case as a class representative. Is that something that informs the reasonableness of interveners' timing? No. Wallach's exit from the case is unrelated to the intervention issues here. Wallach, after significant discovery and an analysis of the overcharge damages, it was determined that the purchasers of one defendant did not suffer an overcharge. Because Wallach had purchased from that defendant, it no longer had an actionable claim. So that issue is unrelated to whether or not there was an adequate class representative, Toro, to bring this action. Indeed, the fact that there's such dispute about whether or not the assignment is enforceable makes it even less reasonable to hold absent class members on notice that the district court would adopt a minority position, invalidate the assignment, and dismiss the class representative, Toro, in this action. Counselor, can you address the court sent you a letter about jurisdictional versus statutory standing. Could you give us your position briefly on that? Is this a statutory standing case, and if so, did the lower court err? This is a statutory standing case. While the procedure that led up to the court's ruling is a little bit irregular, the defendants requested leave to file a 12B1 motion challenging Toro's statutory standing, and the court, for efficiency purposes, requested that defendants brief that issue within the context of class certification briefing. But it's very clear in the court's order that she was dismissing Toro for failure to have direct purchaser standing. It is undisputed by any of the parties that Toro is an indirect purchaser here and thus suffered an injury for Article III purposes. The only question is whether or not it is a direct purchaser under Illinois BRIC and could sue for damages under the Sherman Act. So your position is that the district court erred in treating this issue as one of jurisdictional standing? If you look at the court's language closely, it appears that the court dismissed under 12B1 for statutory standing, and then because there was no plaintiff to pursue the action, the court recognized that there was no case in controversy alive and used the language that there was no Article III case in controversy. But we believe that the district court dismissed the case under 12B1 statutory standing. Well, if it was a statutory standing issue, didn't that need to be raised under 12B6 the first time around in 2011? No. Parties can raise 12B1 or 12B6 statutory standing arguments at any point, and in fact, the district court could have raised it sua sponte. This is a situation in which on the face of the complaint, Toro had statutory standing because it alleged that it had an assignment from a direct purchaser. The defendants disputed as a factual matter that after factual discovery proceeded, that the assignment was invalid for lack of consideration. Therefore, it required discovery in order for the parties to get there. Thank you. We'll hear you on the phone. Thank you. May it please the Court, Prateek Shah for defendant appellees. Restatement Section 332 does not save the antitrust assignment at issue for which the consideration offered in exchange is wholly illusory. Now, there's two reasons for that. One, the restatement itself expressly disavows, and Section 316A and Comment A expressly disavows applicability to legal claims. But even beyond that, and I think this is a critical point, that the assignment at issue was not executed as a gift. And therefore, even if Section 332 were otherwise applicable, it falls outside the coverage of Section 332, which only covers certainty with two of its assignments. It's kind of a curious argument, counsel, because on the one hand, I mean, can it be any, if it's not supported by consideration, what else could it be besides a gift? Well, Your Honor, I think there's two different categories. You have regular contracts. Now, this is all assuming that the restatement applies and 332 applies. You have regular assignment contracts, which the vast majority of have consideration. Those are by regular contract rules. You evaluate it. If there is consideration, it's a valid contract. I assume that's not the case here. Right, okay. The other category is, from the start, it is intended to be a gift. It is a gratuitous assignment, right? And nobody here has ever contended that this assignment from the start was intended to be a gift. You can look at JA 137, the actual assignment agreement. On its face it says, this assignment is in exchange for mutual covenants and other consideration. Plaintiffs have never argued at any point in this case that this was intended to be a gift, that this was a gratuitous assignment. Their argument is that the consideration was cited on the face of the assignment was adequate. So you have two boxes. What you can't say is that this was a regular contractual assignment, but because it turns out that the consideration is defective, it suddenly defaults into a gift assignment. That would turn contract law on its head. If you and I enter into a contract and it turns out that the consideration is defective, that doesn't mean it just becomes a gift. It means you go back to the status quo. But isn't it clear that something is being given? I mean, why can't we just assume it's a gift then? Well, because, Your Honor, on the face of it, if you turn to it, JA 137, here's what it says is agreement. Now, therefore, in consideration of the mutual covenants contained in this agreement and for other consideration, the parties agree as follows. So you can't disregard it. But then paragraph one is very specific about what's being given. I mean, I might turn to my left here and give Judge Strickland my glasses. I might expect him back, but yet paragraph one here is pretty clear. It's permanent. Sure, Your Honor, but if there is a contract for consideration, if you and I enter into a contract for a car, in exchange for the car, I'm going to excuse a debt that you owe me. Now, it turns out that my mom paid the debt already. Now, it doesn't mean, that means there was actually no valid consideration for that contract because the debt had already been extinguished. That doesn't mean you get to keep the car and it's a gift. I meant to give it to you as a gift. That's exactly the situation here. There was no intention to give a gift. It was supposed to be an exchange for consideration. Now, it turns out that the consideration is defective. There is no case, no case that they cite and no case that we found where a regular contract intended for consideration, because the consideration is defective, becomes a gift. Nor would any rule make any sense. We've looked pretty hard. We've cited the cases on 23, which are exactly, page 23 of our brief, which are exactly on point. You have an assignment for consideration. The defendant argues there's a lack of consideration. And the plaintiff comes in and says, oh, wait. But then it defaults to a gratuitous assignment. Every court that we've found has rejected that argument for the common-sense rule that a contract doesn't become a gift because the consideration is failed. They don't send a single case. Our Gulfstream case, I don't have a citation for you, but really focused on the clarity of whatever it is, the giving, the words about the giving. That seems to be the focus, not so much gift, consideration, or anything else. Your Honor, that is true. But that's because the issue in Gulfstream was whether the antitrust assignment has to be expressed or not. That is, whether the scope of the agreement of what you're giving is clear. And there it makes perfect sense that if it's expressed, then it's clear that what you're giving. But here the question is consideration. And under normal contract law, under normal assignment law, you need consideration. Now, even if you apply that narrow exception in Section 332 for a gratuitous assignment, it still has to be a gratuitous assignment. And if you look at 332 itself, Your Honor, the definition of a gratuitous assignment is in Section 332.5. And it says an assignment is gratuitous unless it is given or taken in exchange for performance or return promise that would be consideration. How is the rule that you're espousing consistent with a uniform, consistent, or predictable federal common law? Because part of the arguments that we have between the parties is that there was consideration, and you dispute that it was sufficient. Things like goodwill or proceeding to go forward with the enforcement. If what we end up relying on is a post hoc examination of the sufficiency of that consideration to determine whether something is gratuitous or not, and then which restatement provision applies, and if it's enforceable, that seems like a 180 from the kind of consistency and predictability that we want as people are considering their assignments and the investment that needs to be made to promulgate that third goal, that is the enforcement of assignment rights, as we've described in our case law in Illinois BRIC. Sure, Your Honor. So a couple responses. First, I don't think the inquiry that we're positing here would be all that complicated because in order to avail yourself of 332.5 to say it's a gratuitous assignment, that you can see from the face of the assignment itself, is it intended as a gift as the definition in 332.5 itself says. That inquiry here, there is no dispute about amongst the parties. Everyone agrees that on the face of this exchange, they have never argued this was intended to be a gift. It's always argued that it's meant to be for consideration. The dispute is over whether the consideration was effective or not. But the question about whether it's a gift assignment or not can be easily resolved by court. Now, to be sure, Your Honor, there may be cases where there are disputes and a court has to weigh in. But the court has never suggested that whenever a plaintiff comes in with an assignment, it could be written on a piece of paper that's entirely fraudulent, that the court simply accepts it because it doesn't want to get into subsidiary questions about the validity of the assignment. In Goldstream, this court adjudicated such a claim. There could be all sorts of claims where plaintiffs come in with an assignment. And, of course, it would be simpler for the court simply to just accept whatever assignment it is. But that cannot be the rule, and that's why federal courts have done this. Now, whether every single rule has to be one of federal common law or whether you look to state law, that could be a difficult question. In this case, it doesn't matter because you come out the same way either way. But we're not dealing here with a disagreement between the assinor and assignee as to what their intent was. It's very clear, and here the assignee has proceeded to vigorously enforce the claim. This is a third-party challenge to statutory standing. Why does it matter under those circumstances whether or not there's consideration? If we're to be guided by starting at the baseline, the restatement, which seems to contemplate that there can be gratuitous assignments, and then we look at the federal policies that are outlined in Illinois BRIC, which, as long as there is clear manifestation of the party's intent in the writing, would seem to be unsatisfied by a gratuitous assignment. Okay. Well, a couple of responses, Your Honor. First, it will almost never be the case where the defendant in the antitrust case or in any other case is actually the assinor. And yet there are lots of cases out there where courts adjudicate questions about the assignment, even though the assigner is not present. That's just the nature of these claims. When it's assignment of a legal claim, the defendant is almost never, for obvious reasons, is not going to be the assigner. And yet there's a lot of body of case law where courts are adjudicating these sorts of assignment questions. Now, as to the Illinois BRIC portion of your question, we think actually the antitrust, this would turn the purposes of Illinois BRIC on its head. And that's because you would have a rule, if you accept plaintiff's rule, where as a matter of federal common law, that this assignment, even though it doesn't meet the terms of a gratuitous assignment, nor is their consideration as somehow valid so that the indirect purchaser here, TORO, can bring the claims. And yet under Ohio law, which follows a more traditional rule, in that case, the R&R, the assigner, could bring actual claims under Ohio antitrust law as a direct purchaser because the assignment would be invalid under Ohio law. So you would have that risk of multiple liability of defendants, one plaintiff proceeding under Ohio law, one plaintiff proceeding under federal law, risk of multiple liability, tough damages questions, the various sorts of concerns that Illinois BRIC was concerned about. Rather, if you have the rule, the normal default rule, that says you need consideration unless it's a gift, you would have uniformity between federal and state law. There would be one direct purchaser, that's R&R in a case like this, that could bring both claims or not bring any claims at all. So we think actually the purposes of antitrust law are better served by our rule, which is the traditional rule. Why doesn't that argument cut equally the other way? And that is, if we're requiring assignment and requiring consideration, there are states that don't. You just end up with the opposite parties being able to go but still having duplicative litigation. Sure. Well, Your Honor, I get a couple of responses. One is the court could choose, as a matter of federal common law, simply to adopt the state rule. Now here, since the state rule is the rule that maps on to the federal law, a rule that we're advocating, it's the same result. The other response I would give to you here is that, as our charts show, and I understand they have a competing chart, the majority state law rule is the rule that we advocate. If you look at their chart, not a single case involves an antitrust assignment there. Every case involving antitrust assignments are cited on pages 17 and 18 of our briefs. All of those at least assume the existence of consideration, and that's for good reason. Normally, people don't make gifts of antitrust claims. And if they do, then it actually has to meet the definition of a gratuitous antitrust assignment. Now, if there's any uncertainty about the scope of the definition of antitrust assignment under 332 Section 5, Comment H of Section 332, I think, decisively resolves it in our favor. Here is what Comment H says. It actually speaks exactly to the circumstance where parties enter into an assignment ostensibly for consideration. Turns out the consideration is really not valid, and yet that's not a gratuitous assignment. Here's what it says. Moreover, an assignment as secured before or in total or partial satisfaction of a preexisting obligation is not gratuitous whether or not there is consideration under Section 73. And then skipping to the next sentence. Such an assignment is not gratuitous even if the preexisting obligation is unenforceable. So they speak to this exact circumstance where you have an exchange that's intended to be in consideration. Turns out consideration, not really valid consideration under the restatement. That is still not a gratuitous assignment because under the definition in 332.5, a gratuitous assignment is one that has to be intended as a gift, not just one that it happens to fail with consideration. So your rule is if it's not supported by valid consideration and it's not a gratuitous assignment, it's just unenforceable. That's right. Our primary submission would be there is no such thing as a gratuitous antitrust assignment. It's never been recognized. Again, every antitrust case that's been cited to you assumes consideration. They don't cite a single case in their chart where you have a gratuitous antitrust assignment. But what I'm saying may be the most straightforward way for this court to decide. It doesn't have to wade into that issue. It can even assume the theoretical possibility of a gratuitous antitrust assignment, whether that's under federal common law or state law. It can assume that. It can posit that. But the fact that the assignment at issue undisputedly contemplated consideration takes it outside the scope of that exception. So in other words, an assignment does not just become gratuitous just because the intended consideration fails. Can you also deal with jurisdictional versus statutory standing in an intervention argument? Sure, Your Honor. So in this case, the standing objection actually is jurisdictional. And here's the reason why. Toro, in its complaint, and this is at JA 70, complaint paragraph 18, it posits only one basis of injury in fact. That exclusive basis of injury in fact is the assignment it received from R&R for its direct purchases of the vehicles. If that assignment is in fact defective or not valid, their sole basis for positing an injury in fact has disappeared and therefore they don't have standing. To put it in a different way, it is as if R&R had assigned their claim to either you or me. If it turns out that that assignment is invalid, there is no injury in fact and therefore it's an Article III defect. And just to point you to that language in JA 87 complaint paragraph 18, obviously you're able to read it yourselves, but just to point it to you, it says plaintiffs, Toro Brothers Trucking Company is the assignee of certain claims from R&R, which during the class period purchased Class 8 transmissions and trucks containing Class 8 transmissions, including the Class 8 line haul transmissions, directly from one or more defendants in the United States. As a result of these claims. We're giving you extra time, so we're not going to cut you off right now. Oh, okay. And then it says, and here's the sole assertion of injury in fact. Can you put two more minutes on? Thank you. As a result of these purchases, plaintiffs sustained injury and was damaged by reason of the antitrust violations alleged in this complaint. There is nothing in this complaint that alleges injury in fact as indirect purchaser overcharges. Even if there were, that would be a separate claim and wouldn't lead to injury in fact as to their direct purchaser claim. But doesn't the complaint also identify them in their role as an indirect purchaser? Identifies their relationship to the other parties here? Yes, but it never alleges that they suffered overcharge. As a result, there's no overcharge allegation of injury in fact. You have to have the only injury in fact an indirect purchaser could do is if the overcharge is passed on. They don't allege that in their complaint. The sole basis of injury in fact that they allege is in the paragraph where they allege their injury in fact. Well, perhaps some explicit allegations needed for statutory standing. I'm not even sure of that. But when we're talking about constitutional standing where the allegations of the complaint give rise to the basis for a constitutional injury, why would you require it to be made explicit that standing is being premised on that Article III injury? Well, Your Honor, because they made explicit their basis for standing in paragraph 18. They identify the sole basis of their injury in paragraph 18, and they say it's from the assignment to R&R. So we think in this case it is clear that the district court properly viewed it as an Article III question. But how would that negate or supersede in some way the constitutional standing that they have from just reading the face of the complaint? There is nothing on the face of the complaint, Your Honor, that alleges any other injury in fact. I would agree the fact that they're an indirect purchaser and that that is alleged, that is their relationship here in the pyramid of the marketplace, that alone gives them constitutional standing. No, Your Honor, absolutely not. As an indirect purchaser, the only way you've suffered injury is if you have been passed on the overcharge. If you've actually been charged less or the same price, you have not suffered any injury in fact. They have never alleged, nowhere in this complaint do they allege they've actually been overcharged as a pass-through. That is why they are predicating their suit on the assignment. Now, Your Honor, even if there were any doubt about that, and I don't think there should be, whether you want to characterize it as Article III or statutory standing, what the district court did, and the only place it actually talks about Article III standing, is in the conclusion of its opinion. What it says is, because there is no longer any plaintiff in this case, there's no longer any named plaintiff in this case, for that reason there is no longer any case or controversy, and therefore I dismiss for Article III. That is true whether or not the plaintiff is knocked out as a matter of Article III or statutory standing. The disposition by the district court is still correct. The district court cites this court's prudential case, which says you evaluate whether there's a case or controversy based on named parties. The sole named party is out of the case, therefore the district court was eminently correct in saying there is no case or controversy. Putting standing aside, there's no case or controversy because there's no plaintiff in this. It cites a prudential case, which is exactly right. If I can, and I know I'm out of time, if I could just address the intervention point. I was going to ask you about the intervention, so you're on our time for a short period of time. Okay, so intervention. A couple responses. First, the legal presumption under community bank, that would be an unprecedented sea change in class cert law to say, no matter what, in any circumstance, before the opt-out deadline has been set, that there is a presumption of timeliness. Community bank has very special circumstances in it, and that's why the presumption should be limited to those special circumstances. That was a conditional class certification case where the court granted class certification expressly conditioning that grant on the ability of the class members to challenge the adequacy of class counsel. It then left a two-month deadline from that point, the opt-out deadline, for folks to bring that challenge. That is a very different situation. I simply agree with you on that. Okay. Then they have no legal error. Then they are an abusive, pure abusive discretion. Why isn't this an abusive discretion here? Well, Your Honor. I don't see where the prejudice is, and I don't see the delay being unreasonable. Okay. But maybe you can convince me otherwise. Let me take those in turn. First, as to prejudice, both sides agree that you would at least have to reopen discovery to determine the suitability of the new class representative. But they said they weren't going to take offensive discovery. I'm sorry, Your Honor. They said they were going to limit discovery. They were not going to take offensive discovery. They did, but the amount of discovery that would have to happen as to suitability is not de minimis. Now, they made these arguments to the district court about the relative burden that the discovery and new briefing on class cert would impose on the parties. At J.A. 18 and 19, the district court heard both sides' arguments about how material of a burden it would be, how much discovery would actually need to occur on the ground. The district court expressly considers it at J.A. page 18 and 19 and says, no, under the circumstances of this case, given what's already transpired, these burdens are actually material burdens, real prejudice. When was the trial date? The trial date was still, I think, a year away at the time of these motions. I'm not exactly sure about that. But the point is the district court here had been managing these proceedings, heard precisely the argument on the magnitude of arms, and made a finding that under the circumstances of this case, when it already transpired and what was coming, that this would be material prejudice. I don't see why this court would second guess as an abuse of discretion that considered determination. Well, because it's a pretty important decision that was made here. It ends the case. Your Honor, I do. And the district court is of litigation discovery that had already been invested in the case. Sure, Your Honor. And also, we face the prospect of a filing of a new lawsuit. Does that make any sense? Well, Your Honor, there are timeliness requirements when you intervene, and the district court has discretion to manage that docket. Now, if they follow through on their threat to file a new lawsuit, it doesn't mean you start from scratch. The district courts have lots of tools to take into account the discovery that already happened in this suit. Same experts, same record, all of that stuff they've offered already to proceed on that. In this case, there's no reason why the same agreement couldn't be made if they filed a new lawsuit. The fact that they can file a lawsuit doesn't really bear, a new lawsuit doesn't bear on the analysis. In fact, some courts say it cuts the other way because it suggests they're not actually being prejudiced to the extent that their claims will be barred. They can still file a new lawsuit and proceed. And district courts have plenty of tools to manage that sort of situation. If you'd be picking up where you left off, which I take it is the import of the point you just made, why wouldn't we save everyone, including the court, the burden of a new lawsuit, particularly where we're talking about interveners who didn't have notice, even of the discovery request that you argue should have put them on notice of the need to intervene earlier? Okay, so let me take the first part of it. That is, I don't think you have to save the district court from managing its docket. And the district court is well positioned to decide. I think there's serious questions whether a new suit will actually be filed. As you saw in our briefs, on the exact same record, class cert was denied for these things. I think there's serious questions there. The district court, I think, is in a far better place to assess that risk. But, Your Honor, to the other part of your question about whether they were on notice, the district court made a more than reasonable finding that because the same counsel represented both the plaintiffs and the interveners, that it could reasonably impute the knowledge of plaintiff's counsel. The record suggests that they retained class counsel in the days before filing the motion to intervene. How could we adopt as a rule that the fact they had the same counsel should be imputed retroactively to discovery that was served on a different party years earlier? A couple of responses here, Your Honor, and I think this is critical. It was intervener's burden to show timeliness. This issue was litigated in briefs. This was fully briefed before the district court. Defendant's primary opposition to the intervention motion was based on an imputation theory. That is, because the same plaintiff's counsel represented both, plaintiff's counsel obviously had notice of the potential defects in standing as of both August and November. Therefore, you can impute it to there under Harris, the case cited in the district court's opinion under Clark, the case cited in our brief. In reply, they did not provide any affidavit about the relationship between plaintiff's counsel and the interveners, no declaration, nor did they even make any argument in their reply brief that imputation would be improper because, for example, they were newly retained, had no preexisting relationship, nothing. And the only basis on which they argue, and you can look at their pleading, it's their reply brief, it says, well, plaintiff's counsel itself didn't have any reason to know until the January 8th letter or it would have been premature for them to file earlier. So the record in front of the district court is the interveners show up with the same lawyers. Defendants object. Are you disputing the representation that they weren't retained by the Toledo and JJOS until later in the game? No, Your Honor. I'm not disputing that representation, but I would like to make a couple points about that. First of all, that wasn't in the record, and the district court has to make inferences based upon what's in the record in front of it. The district court knows the parties, it knows the counsel, it knows the relationship, made that reasonable inference. They didn't mention it below. They didn't mention it in their opening appeal brief here. It first appears as an assertion in footnote 18 of their reply brief on appeal, and that footnote, while I would never question I'm sure it is true, it's carefully worded. It says they were retained weeks before they filed. It doesn't make any assertions, and this would have certainly been hotly disputed or certainly a source of discussion in the district court. It never mentions when they first had contact, when they first discussed the case. A retention letter can be signed at any point, and so if you look at the language of their footnote 18, it says they were retained weeks before. And this is precisely why it wouldn't make sense to penalize the defendants and to call it an abuse of discretion of the district court who has the papers before it, has the parties before it, knows that imputation is the primary argument before it, no affidavit, declaration, or even assertion about the lack of preexisting relationship that they first make here in footnote 18 of their reply brief. How would the district court have known that? Instead, the district court made the very reasonable inference that when you have this plaintiff's counsel driving the litigation, the class litigation, showing up with interveners at what happens to be a very strategic time, the day that they file their reply brief to the class cert motion is the same day they file their intervener's motions. All of those circumstances, the district court was left with the very reasonable inference that this was not something wholly new, but that imputation would have been appropriate. In terms of the timing of at least the first intervener, why doesn't it make sense to do that in connection with their response, given that the district court postponed even your briefing on the question of the statutory standing or constitutional standing, as the case may be, until the motion for class certification briefing? Well, Your Honor, as the district court made abundantly clear, they were on notice, the plaintiff's counsel, if it's proper to impute them, were at least on notice as of August and November. The rule is that you have to intervene in a timely fashion, by waiting not in August, not in November, not in January, but by waiting until March 6th, the day that the class cert, the hearing was scheduled for March 25th, less than three weeks later. There was no time for discovery into any of these issues, such as their preexisting relationship between the plaintiff's counsel and the interveners, nor was there any reason for defendants to seek that discovery, given that they had never made any representations that this was a brand-new relationship. They had never met each other, never discussed these issues until weeks before. Are you suggesting that just advising the district court that a party has an intention to file a motion to dismiss, without briefing on that, should be the basis for the clock to be running? At that point, other parties will need to intervene? The letter identifies the basis of the motion to dismiss. Would the district court postpone briefing of that until the end of January? Sure, Your Honor, but that wouldn't have precluded, and certainly as the district court says even before that, wouldn't have precluded them from saying that if you have a potential new party that wants to come in and step in the shoes, there's a lot of things that has to happen. There has to be discovery about their adequacy, discovery about other things related to the proper propriety of them being present in the suit. None of that was possible here because they waited until the same day that they filed their class cert reply, less than three weeks before the hearing. And so, Your Honor, the district court took that into account. It was in front of these proceedings, has set the schedule, knows what the parties knew, and said, look, this isn't proper, and I don't think that that is an abuse of discretion by any means. I think it's an eminently reasonable thing for the district court to say, same counsel has been quarterbacking this all along. They should have known, if not when the interrogatories were posited on the validity of the assignment, at least when the 30B6 deposition squarely put them into contention by November. And certainly not waiting until March, less than three weeks before the hearing. What about the fact that Wallach was still in the case in March, and there was another class representative until early March? Your Honor, even plaintiffs don't rely on that, and I think that's for good reason. There were serious questions about Wallach all along, and their own expert. The reason why Wallach is no longer part of this case is their own expert evidence, which had obviously been in the making for a long time, showed that purchases, and this goes to your question about the indirect purchasers, why can't we just assume that they were injured? It turns out that the evidence showed that the purchasers of Daimler trucks actually received a discount, the indirect purchasers, and they were not injured in fact. And so they excluded Wallach from the definition there. Why should we include the knowledge of those defects as to the second class representative to these interveners? Your Honor, I'm not imputing anything as to the second one. They have predicated their intervention motions, if you look at it, solely as based upon, they have never argued that, oh, well, we didn't intervene because Wallach was still in the case. The fact that they haven't made that argument, I think, is quite illuminating. There's very good reasons for that. They don't want to go down that road. Wallach had plenty of concerns. He was a trustee. Here you have a plaintiff suit where the only two plaintiffs, they don't actually have any direct purchasers. You have a trustee of a bankruptcy estate and you have an S&E. And so I think it speaks to why there are different dynamics going on in the case, but it speaks to why they're not relying on it.  Thank you, Your Honors. In rebuttal, defendants' appellees have made this a simple case. If gratuitous assignments are enforceable, as they agree they are under the restatement, then this assignment is enforceable because, by definition, an assignment that is not for consideration is a gratuitous assignment. But their point is that it's different if it's intended to be for consideration. The cases on which appellees rely for that proposition are really getting down to the heart of whether or not the parties intended to convey the assignment at all. Oftentimes, and in fact it's the reason why there's conflicting case law in this case, consideration, the term consideration, is oftentimes used as a proxy for trying to understand whether or not there was a meeting of the minds between the assignee and the assignor, the promisee and the promisor. Here, where an assignment is written and expressed, there is no question about the intent of the parties. The only question here is whether third parties to the assignment can undermine and invalidate the clear intent of the two parties to the assignment based on an extremist requirement. Notably, this court had an occasion to address Gulfstream's express assignment requirement in Lerman. In that case, this court rejected an attempt to use Gulfstream's language to require special terms of art. The court recognized that as a general rule, such special terms of art are not required to make an assignment enforceable. Consideration in general contracts or even general assignments might be a necessary requirement to determine and ensure that the parties intended to convey the instrument. But whereas here, the assignment is expressed and written and there is factual evidence that the parties intend to continue with the assignment, there is no basis for requiring consideration. It's also noteworthy that if this court were to adopt the minority position among the states and require consideration, that third parties such as appellees would not have standing to raise that argument and invalidate the assignment, whereas here, both the assignor and the assignee agree that the assignment should be enforced. How do you react to your adversary's point about there's never been a decision that says that has basically approved a gratuitous antitrust assignment? There's also never been a decision that required consideration in an antitrust assignment context. The truth is there's just not a lot of case law on this issue. There are a handful of cases which appellees cite in which antitrust assignments were discussed and it happened to be that in those cases, consideration was present and the courts noted that. But that does not mean that consideration is required. The better rule is that it is not. However, if appellees believe that the face of the assignment purports to convey consideration, then we have no dispute here and the assignment is enforceable. Black-letter law is that courts do not question the sufficiency of consideration. It's unquestioned that TORA was under no legal obligation to provide R&R with its best efforts to minimize discovery. And so while perhaps R&R or even appellees think that that's not worth very much, it's sufficient to qualify as consideration rendering the assignment enforceable. Turning quickly to the issue of the intervention. The determinative issue on intervention is whether or not absent class members had any reason to believe that their rights were in question. Nothing was filed publicly indicating that defendants intended to question the adequacy of the class representatives in this case. The mere fact that they raised issues related to class representatives' adequacy and discovery should not put absent class members on notice that they would need to intervene because in fact defendants do that in every single class action. Defendants always understandably seek discovery about the adequacy of class representatives, whether it relates to their purchases, their assignments, or some other issue. If that is sufficient to require absent class members to file a motion to intervene to preserve their rights, then it will undermine, as American Pipe said, the very purpose of Rule 23, which was to minimize duplicative and inefficient firing. One could certainly imagine a situation where any presumption would be rebutted where the parties are all represented for the entire period by the same counsel. What do we do with the fact that, as has been asserted by your colleague here, Mr. Shah, that there's nothing in the district court record, the record on which we also need to rely, that would indicate that counsel was in fact retained, as you represented in briefing, only days before the motions to intervene? There is in the record the argument that the proposed intervenors affirmatively did not have notice of this issue until the January filing by defendants. What is that? It's in the motions to intervene. In both motions to intervene, proposed intervenors affirmatively state that they had no reason to intervene until at least January. In fact, proposed intervenors go one step further and say that they don't believe that their intervention should be required because Toro has an assignment to pursue the case. But out of an abundance of caution, because defendants had raised the issue, they felt the need to intervene at that time. There is no evidence in the record other than that statement that proposed intervenors had any knowledge of the concerns the defendants had with the proposed class representative. Is the statement that they had no reason to believe or they had no notice that there had been a challenge to the standing of other class representatives? I honestly don't remember the exact wording. But either way, the same result occurs. There is no reason for these specific proposed intervenors or any of the absent class members to know that defendants intended to raise this argument until at least January. And really until they affirmatively made the argument. Not only would the court, but the proposed intervenors and the 2,000 absent class members in this case would all be significantly prejudiced and inconvenienced if we had to redo this case from the beginning. And there's no reason to do so here. For that reason, we ask that the court reverse. If there are no other questions. Thank you, counsel. Thank you so much. Thank you, counsel, for the excellent arguments, both written and oral. You gave us a lot to think about. And I'd ask that the parties order a transcript and split the cost, if you will. We'll take the case under advisement. And Ms. Amato, if we could go off the record, I'd like to greet counsel Sidebar.